TINDELL, J., CONCURRING IN PART AND DISSENTING IN PART:
 

 ¶ 26. I concur with the majority's decision to affirm Johnson's convictions for burglary of a dwelling and possession of a firearm by a convicted felon. However, because I believe insufficient evidence supported Johnson's aggravated assault conviction,
 I would reverse and render this conviction.
 
 [1]
 

 ¶ 27. Brown was the only eyewitness to testify in this case. According to her testimony, when she encountered Johnson in her employer's house, Johnson told her to hold it and pointed a gun at her. Brown then testified that it sounded "like the gun ... click[ed]." After hearing the click, Brown took off running. When asked if she saw Johnson pull back the gun's hammer, Brown testified she did not know. When asked if she saw Johnson's hand on the trigger, Brown again testified that she did not know. When asked if she had ever "heard a gun click before[,]" Brown admitted she had not and that she only thought it was a gun that she heard "click."
 

 ¶ 28. In discussing cases involving a conviction for aggravated assault with a deadly weapon where the defendant never actually used the weapon or, in the case of a firearm, never actually discharged the firearm, our appellate courts have closely scrutinized the factual circumstances involved.
 
 [2]
 

 Compare
 

 Gibson v. State
 
 ,
 
 660 So.2d 1268
 
 , 1268-70 (Miss. 1995) (finding insufficient evidence to support an aggravated assault conviction where the defendant pointed a gun at an officer's chest but then complied when ordered to lower his weapon),
 
 Murray v. State
 
 ,
 
 403 So.2d 149
 
 , 150-53 (Miss. 1981) (reversing an aggravated assault conviction where, during a prison escape attempt, the defendant threatened a correctional officer by holding a shank to the officer's throat but then allowed a fellow inmate to convince him to abandon his endeavor),
 
 and
 

 Edgar v. State
 
 ,
 
 202 Miss. 505
 
 , 508-09,
 
 32 So.2d 441
 
 , 442 (1947) (holding that the defendant's exhibition of a pistol, accompanied by his "expression of vexed discontent" after losing money in a craps game, was insufficient to sustain a conviction of assault with the intent to murder the victim even though the defendant discharged the pistol during a scuffle and killed a third party),
 
 with
 

 Robinson v. State
 
 ,
 
 571 So.2d 275
 
 , 276-78 (Miss. 1990) (finding no error in the denial of the defendant's directed-verdict motion on his aggravated assault charge where the defendant showed up at his former mother-in-law's house with a lighter and gasoline, threatened to burn his ex-wife, chased his ex-wife from the house, caught up to her and sat on her, and again threatened to set her on fire),
 
 and
 

 Hunter v. State
 
 ,
 
 196 So.3d 998
 
 , 999-1000 (¶¶ 1, 6-7) (Miss. Ct. App. 2015) (upholding the defendant's aggravated assault convictions where he threatened to kill two officers and then attempted to retrieve a knife from beneath a pillow). As our caselaw makes clear, simply "pointing" a weapon at someone is not enough to commit attempted aggravated assault with a deadly weapon.
 
 See
 

 Gibson
 
 ,
 
 660 So.2d at 1270
 
 .
 

 ¶ 29. Here, Johnson never issued a verbal threat evincing any intent to harm Brown. Further, the State presented no eyewitness testimony to show that Johnson actually pulled the trigger or that the gun ever discharged. The primary evidence
 supporting his aggravated assault charge was Brown's testimony that she thought she heard the gun "click." Had Brown testified that she actually saw Johnson pull the trigger or that the "click" she heard was in fact a result of Johnson attempting to discharge the weapon, the evidence very well may have been sufficient to affirm his conviction.
 
 [3]
 

 ¶ 30. In considering the sufficiency of the evidence to support a conviction, "we view the evidence in the light most favorable to the State" and "ask whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."
 
 Sellers v. State
 
 ,
 
 108 So.3d 456
 
 (Miss. Ct. App. 2012) (internal quotation mark omitted). After concluding that Johnson was guilty of burglary of a dwelling and was a convicted felon in possession of a firearm, I can certainly understand a jury's inclination to also convict Johnson of aggravated assault. That being said, I do not believe any rational trier of fact could find the sound of an unidentified "click" sufficient to prove Johnson actually attempted to discharge the weapon in an attempt to assault Brown. I therefore concur in part and dissent in part from the majority's opinion.
 

 FAIR, WILSON AND WESTBROOKS, JJ., JOIN THIS OPINION.
 

 Because Johnson's sentences were to run concurrently and his sentence for burglary of a dwelling exceeded his aggravated assault sentence, there is no need for resentencing.
 

 Our caselaw is well settled that
 
 discharging
 
 a firearm in the direction of an individual can constitute sufficient evidence to uphold an attempted aggravated assault conviction.
 
 Stringer v. State
 
 ,
 
 862 So.2d 566
 
 , 568 (¶¶ 10-11) (Miss. Ct. App. 2004). Interestingly, the State cites
 
 Stringer
 
 for its contention that witness testimony stating a defendant
 
 pointed
 
 a gun at someone constitutes sufficient evidence of intent to cause harm for an aggravated assault charge. However, the State fails to recognize that, unlike Johnson, the defendant in
 
 Stringer
 
 actually discharged his firearm several times in the direction of a pursuing officer.
 

 Id.
 

 at 568
 
 (¶ 11).
 

 The majority cites
 
 Foreman v. State
 
 ,
 
 51 So.3d 957
 
 , 959 (¶ 6) (Miss. 2011), for the proposition that a defendant's failed "effort to discharge the gun would support a jury verdict for a charge of aggravated assault with a deadly weapon." I agree. However, in
 
 Foreman
 
 , the witness testified that she saw the defendant "pull out a gun, point it at the car, and try to shoot it."
 

 Id.
 

 at (¶ 3). The witness further testified "that Foreman then cocked the gun again and shot it," killing another individual in the car.
 

 Id.
 

 Here, Brown did not offer any such testimony of actually seeing Johnson try to shoot the gun.